Thank you. Please be seated. Good morning everyone. A big lineup we have today. We have six cases per argument and we will begin with United States v. Conill-Perez, docket 256101. Counsel, when you're ready. Good morning Mr. Anderson. May it please the court, I'm John Carlson from Mr. Conill-Perez. The district court misapplied the so-called crack house enhancement. Room 210 of the country or excuse me, yes, the country inn and suites was never maintained for a primary purpose of distributing drugs. Maintaining a premises requires continuity and duration. Mr. Conill-Perez occupied the hotel room at most for two hours, two fleeting a presence to satisfy a guideline aimed at ongoing drug operation centers. The district court found only one such purpose. Temporary storage between the only two sales of the case, both of which occurred away from the hotel. All other indicia, I underscore all other indicia of crack house were missing. There were no sales in the room, there were no drugs found there, no scales, no receipts, no cash, no guns, no ammunition, nothing. The lead agent told the district court that nothing suggested drug activity took place in the room. The storage that occurred there was incidental and brief, precisely the collateral use excluded by the guidelines. Issue two, which involves Mr. Conill-Perez's criminal history, furnishes an independent basis for reversal, despite the unfavorable standard of review. That's because in computing criminal history points, the guidelines plainly tell us to add the revocation sentence to the quote original term of imprisonment. But where, as here, there is no original term of imprisonment because Mr. Conill received straight probation for that 1996 conviction, there's nothing to add. There's nothing on which the guidelines can operate on. It's missing a critical predicate condition, the existence of an original sentence of imprisonment. Why isn't it just zero plus the revocation time? Because that undermines the guideline, and it's inconsistent with the commentary. Note 11 tells us twice to add the revocation sentence to the original sentence of imprisonment, if any. That presupposes, that use of if any, presupposes the existence of the predicate condition, the original term of imprisonment. It's not an invitation to convert that to a zero month sentence. Well, couldn't you read that to say if any means that if there is you, either way, you add it. I mean, if it's zero, you're gonna not be adding any, but you're still gonna be looking at it. But if there, if it's five years, you're gonna add the five. So it's, it's just recognizing that the mathematical equation may or may not have years on one, on one side of it. I don't read it that way, Your Honor, but I understand it's not, it's not an unreasonable point, which brings me to what I was going to say in my introduction. This is a tough issue, and the standard of review makes it tougher still. I think you're gonna have to reverse on Krakow's, in which case, if you do, I urge you to include in your remand an instruction for the, to the district court to consider Mr., to reconsider Mr. Coneal Perez's criminal history in the first instance with proper briefing. Let the district court take first crack at it. If it comes back, you'll have a better record, and I think that's a meritorious way to handle this because I think this is an important issue. It's never been addressed in this circuit. It's likely to recur given the shifting norms about probationary sentences. I think you're going to see more of them. We already do, and you're therefore going to see more revocations. So I urge the court to hold its hand on this issue. Let it stew in the district court. Address it if and when it comes back. I'm putting most of my eggs in Stash House. Because you're on plain air. Correct. Okay. Yes. Is that a do-over in some, because they didn't raise it the first time, so we're going to remand for, let's say hypothetically, for resentencing due to the table, then you can go back and look at the full sentence and all the enhancements. That's my request. I think you'd have to put that into your remand instructions. I quibble a little bit with the do-over characterization. That's the problem, and it's the problem on all plain air cases. The bane of my existence as an appellate lawyer, there was no doing in the first place, and that's what I'm urging. This is a highly capable district court judge. If we gave him the raw material that Mr. Anderson and I have supplied you, he would advance the ball, and you would have a better target to take a look at. On the storage issue, the guideline commentary does say including storage. Yes. Are you saying that the storage has to be connected to a distribution or manufacturer at the same location? Yes. Plus, I'm saying the storage has to be more than incidental. Right. Well, it's more than incidental in the sense that the person doesn't want to leave it in the car and have it stolen or something like that. In other words, there's a reason to have it nearby. Yes. No, I do not. I accept the finding. I come here accepting the inference that the district court made, and I think a reasonable one, that he stored drugs there briefly in this two-hour window, but that's not enough. The only way to sort of get there is to use Mr. Anderson's, I think, flawed reasoning, which is to collapse the purpose of Mr. Coneal's trip to Oklahoma, which admittedly was to sell drugs, no other purpose, into the purpose for renting the room. But if we collapse that purpose and ascribe the room, the purpose of the room, to the room purpose of the trip, we'll have converted this specific offense characteristic into a general characteristic that applies to any traveling drug dealer. Drug dealers, as I say in my briefs, need places to stay when they come to town to sell the drugs. When would the storage condition kick in then, and when would it not? Is it just simply a hotel room exception? No. The occupancy is the critical fact. Now, I think this brief fleeting occupancy problem is more likely to recur in short-term rentals. But, you know, and there are plenty of cases Mr. Anderson excavates them in which courts have applied crack house to hotel rooms. I have no quibble with that, but not for two hours. It's not just occupancy, it's also control, isn't it? I think Mr. Anderson has won the argument on that question. Mr. Coneal was not on the lease, or he didn't formally rent the room, but I'm not quibbling with that. Mr. Coneal controlled the room, full stop, like for two hours at most. Did that, did the, there was a slip of paper that they found that had his name on it, as well as... Yes, that's why Mr. Anderson... What was on the slip of paper? What kind of, what was it? I think his name. But what was the... It's not in the record. Describe it as a slip of paper. I just wondered what it was. Did it have any dates on it? I take it it didn't. Like when was the room reserved for a period of time? That is not in the record. I couldn't find it, yeah. Yeah, there's no indication about how long they rented the room, but I again, I own it. Mr. Coneal rented that room. Yeah, but if you look at the cases from other jurisdictions on the question of whether it's maintained, there seems to be quite a lot of variation. I mean the Seventh Circuit takes a pretty conservative view of it and requires a significant duration. Yes. Other circuits take different view. The only thing I could find that really has us focused is United States versus day, and there we said 10 days is enough, and we didn't say whether four was enough. We said, well, we don't know, and we didn't opine. What's the limiting principle? What, you know, how do we know how long is long enough to use a hotel room as part of your drug distribution plan for you to have maintained? You've hit the nail on the head, Judge McHugh. That's the question. That's the question. Let me, can I push back a little bit? It's not just the Seventh Circuit. I've submitted a 20HA letter yesterday citing there are three cases, substantial period of time continuing, significant. It's more than two hours. I can't answer your question save it's longer than two hours. Second thing, is the sliding scale, does it depend, like if the hotel room were being used to, you know, weigh the drugs and package them or even manufacture them, would you need a smaller time of duration of the hotel room, or are they two separately looked at considerations? The courts talk about the totality of circumstances. I think, I don't see why you couldn't construct a sliding scale in there, but all of those facts are missing in my case. If I, if there was evidence of drug packaging, measuring, sales, I wouldn't be standing here. There's none of that. Here might be. Can I go back to Day? Because I think Day is instructive. Respectfully, I think, Judge McHugh, you've slightly misstated what the panel did in Day. Judge Moritz, interrupt me if I'm wrong because she was on the panel. The court did not say we don't know if four hours is enough. That was Mr. Day's argument. Four days is all I stayed there. That's what he said. Well, they said we explicitly declined to decide. Bingo. Whether four hour period is sufficient duration to support maintenance. Because there was ample evidence that he stayed there 10 days. So he lost that argument not because four days might have been enough. He didn't have the evidence. On an evidentiary factual basis, he lost that argument. So the court did not say four hours is, four days, excuse me, is enough. It just said you're wrong, Mr. Day. If there are no, oh. Well, you do have, I mean, you, you mentioned that he, you know, he essentially, he's off the hook for the acquisition of the site, which is one of the factors that we consider who acquired the site. But he's not off the hook. He admitted that he asked, I'm trying to remember the individual's name, the other. He has initials. Initials, right. We have initials. He asked him because he couldn't, he asked him to rent the room. Yes. And then we have his name on the slip of the room. So you don't, you can't win that one factor. No. No. You're focusing on control. No, I'm conceding he controlled, but for two hours, just leading a time. The extent of control, the scope of it. And the purpose, there's not sufficient evidence showing that a primary purpose was drug trafficking. Because of the lack of evidence connecting the room to the drug-related activity, add that to the DEA agent's testimony. He told the district court nothing indicated drug trafficking occurred in this room. So I guess it depends on how you define drug trafficking. Well, he wasn't selling drugs out of the room, right, but there was a reasonable inference that he was storing the drugs in the room so that he could then take them out and traffic them. That's, yes, that and control I stipulate too. But that's not enough to impose the guideline. If there are no further questions, I'll save mine for rebuttal. Thank you. Good morning, your honors. Good morning, Mr. Carlson. Matthew Anderson on behalf of the New York Times. Matthew Anderson traveled from Miami, Florida to Oklahoma City in September of 2024 for the express purpose of distributing drugs. When he arrived, he conducted one transaction before checking into a hotel, where he briefly went in with luggage, left, conducted another transaction, and returned to that hotel. Can you help me with the quantities? I know that it's 4.8 kilograms of pills, counterfeit pills, sounds like, or at least some of them. And then he is selling in 1,000 pill quantities the two times that he did, I believe. How do those translate into if he's continued to sell at that rate, that amount, how many sales would he have? Would he have 50 sales, or would he have five sales? Your honor, the first sale was for 4,000 pills, and in the record that was 440 grams, or roughly a little less than 10% of what the total amount was found in the duffel bag, which was 4.8 kilograms. Okay, so you're thinking somewhere based on his average of 15 or 20 sales? That would be a reasonable conclusion. He did one for 4,000, the second one was 1,000, and again, going at the roughly 100 grams per every 1,000 pills. So maybe a few days worth. That is correct, your honor. All right. He wasn't going to get on an airplane the next day and fly home. Based on the rate of sales, no, he would not be. The conclusions that the district court reached that Mr. Coneal Perez maintained the premises for the purpose of drug distribution, I want to touch briefly on the standard of review that this court should apply as to that. To reach that conclusion, the district court made multiple facts, but then ultimately, again, made the facts that he did maintain, and it was for the purpose of distributing drugs. Those two findings should be reviewed for clear air. In this court's decision, which was cited in the appellant's brief, this court noted the district court made the factual finding that the primary purpose of the property, excuse me, was the storage and distribution of controlled substances. But that's a different issue. Primary purpose is different than whether it was maintained. That is correct, your honor. And so I think your colleague just conceded control primary purpose, and we're really focused on the duration. And given our decision in day, I just don't know that two hours is enough for us to be able to say that it wasn't clear air for that to meet the standard for maintain. Maintain means nothing then, if it's two hours. The guidelines do not include any requirement of continuity or duration. But we do. This court in day declined to reach that question. I would further note that this court in its pattern. No, that's not quite right. I mean, we do have factors. First of all, we have factors to consider. The guidelines don't define maintain, but they do state factors. And the extent to which the defendant controlled access to or activities at the premises is the primary one. And that's what we're talking about here. You may be able to get him to the hotel, and you may have his name on a piece of paper, and you may have him say, and I'm going to rent this room. But what do we have at all about the extent to which he controlled access to or activities at the premise, other than we there wasn't a thing found in there. No narcotics, no nothing, not even any personal items, which I don't think there was a single case that either party cited that had those kind of facts. There's nothing in this room. And the short period is one thing, but there's all kinds of other problems that you have. Well, Your Honor, I think as the district court found, it was a reasonable inference that Mr. Corneo-Perez used that hotel room for the purpose of storing the duffel bag filled with drugs. With respect to his control and access to it, Mr. Corneo-Perez was left there. Storing for how long? When? When did he start? When did he finish? How long were they there? What else happened in that room? Who else was there? I mean, there's just nothing. We know nothing about anything inside the room. Your Honor, I think that that is an accurate statement. Or even a time period. The record does not include clear statements about the timing of this. I think the parties have both been using the shorthand of that it was a couple of hours in which he was in that room. It's your obligation to show that. It's not there. I understand, Your Honor. But what we do have is that Mr. Corneo-Perez, and the reason why he was coming to Oklahoma City, was to distribute drugs. That he knew that he needed a base of operations. So he had EB help him rent a hotel room where he would stay while he was conducting these transactions. We have Mr. Corneo-Perez and EB jointly carrying luggage into the hotel room. We have Mr. Corneo-Perez subsequently leaving that hotel room to conduct a 1,000 pill transaction at a nearby hotel. Mr. Corneo-Perez then returns to the hotel room. At that point, EB leaves in the vehicle that Mr. Corneo-Perez and EB both arrived in, and a traffic stop was conducted. So, I mean, there's clearly drug trafficking. And that's a crime. And he was convicted. But the question is whether it is appropriate to use the stash house enhancement, which is something different, and attempts to address a different problem, which doesn't appear, based on the case law and the enhancement itself, to be looking at a transitory two-hour engagement of a hotel room. I think what distinguishes Mr. Corneo-Perez from other cases, and from the concern raised by Mr. Carlson, that this would apply to any courier making a trip that required a stop in hotel rooms, is that this was Mr. Corneo-Perez's distribution. He had the intent to set up a base of operations at this hotel room. And the fact that the government was able to stop it at the outset of that operation does not take away from the fact that Mr. Corneo-Perez came to Oklahoma City with the intent to set up a business. So, it's an attempted attempt to have a stash house. An attempted stash house. I think there is the understanding that maintaining is... Well, what is maintaining? I mean, would you admit that, based on United States v. Day, that there is a continuity and duration piece of maintaining? I think it is one of the factors that the court can look at. Okay. If he checked in, went out, and made a drug sale and was arrested immediately, would he have maintained, in your view, that hotel room as a stash house under the enhancement? And we're talking 20 minutes that he's checked in and arrested. I think it would depend on other factors. It is not an exclusive factor. And what are those factors? I mean, I do think other factors would be relevant, including whether they're making meth in the bathtub in the hotel room. But here, we have the testimony that there's absolutely nothing in the hotel room. Not even a big bundle of cash that would make the hotel room stand out as a, quote, stash house. And I believe the guidelines recognize that the storage of drugs is the equivalent to the distribution and manufacturing that is set to be captured by this enhancement. And this court, in its pattern jury instructions, recognizes the need for flexibility in the definition of maintain. In fact, the pattern jury instructions for what the appellant called the statutory doppelganger does not provide a specific definition for maintain, but states that the evidence in each case will dictate the wording of the instruction defining maintained. And it talks about the amount of time. That is one of the factors that this court lists in the pattern jury instructions. But it also talks about the possessory interest, whether he owned or rented the place. Talks about the activities that occurred at the place and supervision of others at the place. And here, we have Mr. Cornel Perez rented this hotel room. He gave direction to EB to do so, and therefore, exercise supervision over EB. And he had the activities, specifically the storage of it. And certainly can see that there are other cases in which there is more direct sort of drug use or drug trafficking going on, but storage has been recognized as being one of those types of activities that is meant to be captured. Do you think this is the outer bounds or do you think that you could even go further and still have the enhancement? You mean, less time, Your Honor? Well, I mean, we can think of all kinds of hypotheticals. If the authorities knew from the confidential informant he was coming to town, and rather than waiting for a sale, they just go knock on his drawer, mind if we take a look around five minutes after he arrives. He says, well, sure, you can look around and they find the pills. Would that be enough? I hesitate to say five minutes would be enough, Your Honor. I also would hesitate to say that there is a specific outer bound or mandatory amount of time in which a defendant is required to stay in a place. Is your argument dependent on there actually having been a distribution? Okay, say they go to dinner for three hours and come back. Not so much the time, but. I would not believe that a distribution would have to occur, but there would be have to have the intent to distribute. For instance, if he checked in and stored drugs at that hotel for multiple days without ever making a sale, and then a search was conducted, given the amount and the quantities, I do not believe that an actual distribution would be required. Let me ask you this. If ultimately we were to disagree with you on the Stash House enhancement, do you agree that we should ask the district court to reconsider the other enhancement based on full briefing, the benefit of full briefing? Your Honor, I believe that, one, that guideline enhancement is clear and it's clear in its application to Mr. Cornel Perez. Two, Mr. Cornel Perez does not establish plain error and therefore this court should not remand under, for reconsideration on that question. This application of 4A1.2k is a straightforward application of United States v. Coleman in which this court recognized that these guidelines direct the sentencing judge to add the time of imprisonment served on revocation of probation to the original sentence. Further, if we look at application note 11, if we read further than what Mr. Cornel Perez cited in his 28J letter, it says if the sentence originally imposed, the sentence imposed upon revocation, or the total of both sentences exceed one year and one month, the maximum three points would be assigned, and therefore it clearly contemplates an instance in which only the sentence upon revocation exceeds that amount. I would further note that if this court were to interpret 4A1.2k as urged by Mr. Cornel Perez, it could lead to results that are directly contrary to the purpose of that guideline provision. And the purpose of that guideline provision is to ensure that no more than three criminal history points would be awarded for any particular conviction. But if this entirety of Mr. Cornel Perez's criminal history all occurred within, say, 10 years, and he was sentenced to probation, he would receive one point for that, and then later revoked and received this revocation sentence, he would receive three points. And therefore, if as Mr. Cornel Perez urges, this guideline does not apply to original sentence of probation, Mr. Cornel Perez would have received four criminal history points for that, which is contrary to the stated purpose. And we could imagine even as revocations are, as this court is aware, can happen multiple times on the same sentence, it can be probation, revocation, supervised release, this could lead to just ever-increasing amounts of criminal history points assigned if this court creates a carve-out for a probationary sentence. And further, I would note that the title of this guideline provision is basically the effect of revocation on parole sentences. But the sentence that was given, do we know how it was allocated between the original offense and for the probation violation? Indeed, was it a zero plus all of the rest of the time as for the revocation? Or did the court say, I'm sentencing you on this, and you get X amount for this, and you breach my trust, here's the rest. As far as the sentence that he was given on revocation, how much was that based on? Total sentence, yes. The only term of imprisonment he did was on revocation. The original sentence was in 1996, and he received parole, and then subsequently was revoked, I think in 2013 or 14. All right, further questions? All right, thank you counsel. Thank you. Judge Phillips, the answer to your question is nothing in the record. In the PSR, it discusses what the state court judge in Florida 30 years ago just talked about. I want to talk about the question of intent that bubbled up a little bit. I think, Judge Phillips, you were flicking at that in your initial question about what he intended to do with all those pills, and there were lots, and then Mr. Anderson explicitly addressed it. This crack house guideline makes the purpose of the room relevant, not the purpose of the defendant, and we know that because it doesn't say maintaining, or intended to maintain, or would he have maintained. It's past tense. Impose the two points if the defendant maintained, past tense, the premises for the purpose of drug trafficking. Purpose modifies the room, not the defendant's state of mind. So is there such a thing as storage being enough by itself? Yes, unequivocally yes, but it has to be longer than, at most, two hours. All right, no more time. I was going to answer another question. Thank you. Any further questions? All right, thank you, Mr. Carlson. Thank you, counsel, for your arguments. The case is submitted. Counselor excused.